## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ELIZABETH T. LYDE,
        Plaintiff,

v.                                                      No. 3:13-cv-00603 (JAM)

CAROLYN W. COLVIN, *Acting*
*Commissioner of Social Security, U.S.A.*,
        Defendant.

## RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION
## OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff Elizabeth Lyde claims that she is disabled and cannot work as a result of

depression, anxiety, post-traumatic stress disorder, personality disorders, substance dependence,

obesity, carpal tunnel syndrome, and diabetes. She has brought this action pursuant to 42 U.S.C.

§ 405(g), seeking review of a final decision of the Commissioner of Social Security, who denied

plaintiff's claim for supplemental security income and disability insurance benefits. The

Commissioner concluded that although plaintiff suffered from severe impairments and could not

work in her previous jobs, she could still work in another type of job. For the reasons that follow,

I will grant plaintiff's motion to reverse or remand the decision of the Commissioner (Doc. #13),

and deny defendant's motion to affirm the decision of the Commissioner (Doc. #16), and I will

remand the case for prompt reconsideration by the ALJ.

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner, as well as the

comprehensive factual background in Magistrate Judge Fitzsimmons' Recommended Ruling.

Docs. #9-2; #16. Plaintiff was born in New Haven, Connecticut in 1962. She dropped out of

school in the 10th grade but eventually earned her GED. She has three children, the youngest of

1

whom still lived with her at the time of her initial filing. She had many jobs over the years, but most recently worked as an overnight stocker at Wal-Mart, from which she was fired in 2008 for forgetting things.

Plaintiff was 45 years old on July 1, 2008, the date of the alleged onset of her disability. She stopped working at that time because she experienced leg pain and incontinence while working at Wal-Mart. She now cites depression, anxiety, post-traumatic stress disorder, personality disorders, substance dependence, obesity, carpal tunnel syndrome, and diabetes as the sources of her disability.

Plaintiff's benefits petition was initially denied in September 2010 and upon reconsideration in February 2011. After a hearing in December 2011, Administrative Law Judge (ALJ) Ronald J. Thomas held that plaintiff was not disabled as defined by the Social Security Administration (SSA). Plaintiff requested Appeals Council review, which was subsequently denied in February 2013. She then filed this federal action, seeking review of the Commissioner's decision and asking that the Court reverse the Commissioner's decision or remand the case for rehearing. (Doc. #13). The Commissioner has moved to affirm its final decision (Doc. #15).

The case was referred to Magistrate Judge Holly B. Fitzsimmons, who filed a Recommended Ruling to deny plaintiff's motion to reverse or remand the Commissioner's decision and to grant defendant's motion to affirm the decision of the Commissioner. (Doc. #16). Plaintiff has filed an objection to the Recommended Ruling, contending that Judge Fitzsimmons erred in affirming the ALJ's assessment of the severity of her mental health impairments, and by affirming the ALJ's failure to either consider vocational expert testimony when considering plaintiff's ability to perform jobs that exist in significant numbers in the national economy or,

alternatively, to explain why vocational expert testimony was unnecessary. Doc. #20. Although I disagree with plaintiff's first objection, I agree with the second, and conclude that the ALJ should have addressed whether plaintiff's non-exertional limitations were more than negligible such that vocational expert testimony should be considered.

## DISCUSSION

This Court "may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record." *Dafeng Hengwei Textile Co. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 287, 291 (E.D.N.Y. 2014). Except as to the portions of Judge Fitzsimmons' ruling that are the subject of objection, I find no clear error here. But I must otherwise "review[ ] the parts of the report and recommendation to which the party objected under a *de novo* standard of review." *Ibid.*; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence may be defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citation omitted).

To qualify for disability insurance benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not

only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)).

A five-step, sequential evaluation process is used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Social Security Administration's listing of impairments; (4) whether—based on a "residual functional capacity" assessment—the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing Social Security regulations). The claimant bears the burden of proving her case at steps one through four, while the burden shifts at step five to the Commissioner to demonstrate that there is other work that the claimant can perform. *Ibid.*

Here, the ALJ found at step one that plaintiff had not engaged in any substantial gainful activity since July 1, 2008. At step two, he determined that plaintiff's depressive disorder, anxiety disorder, post-traumatic stress disorder, dysthymic disorder, antisocial personality disorder, insulin dependent diabetes mellitus, status post carpal tunnel release, obesity, and polysubstance dependance constituted severe impairments and that these "impairments are severe because they cause more than minimal functional limitations." Doc. #9-2 at 22.

At step three, the ALJ declined to conclude that plaintiff was *per se* disabled, because

plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Ibid.* Specifically, the ALJ compared plaintiff's impairments to four of the listed impairments: affective disorders (Listings § 12.04); anxiety-related disorders (§ 12.06); personality disorders (§ 12.08); and substance addition disorders (§ 12.09). With certain limited exceptions—referred to as "paragraph C" criteria—each of these listed impairments require at least two of the following "paragraph B" criteria:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

*See* §§ 12.04, 12.06, 12.08, 12.09. The ALJ concluded that none of the paragraph C criteria applied in plaintiff's case. In addition, he found that plaintiff had mild limitations along the first two paragraph B categories, relying on plaintiff's self-reports (Doc. #9-2 at 241–48), "moderate difficulties" with concentration, persistence, and pace, relying on the report from consulting psychologist Dr. Anthony Campagna (Doc. #9-2 at 644–48), and had "experienced no episodes of decompensation which have been of extended duration." Doc. #9-2 at 23.

Proceeding to step four, the ALJ was required next to identify plaintiff's "residual functional capacity" (RFC), which is "the most the claimant can still do in a work setting despite the limitations imposed by h[er] impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*per curiam*). The ALJ concluded that plaintiff's RFC enabled her to perform "light work . . . except that she is limited to only occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, or balancing," and is also "limited to performing simple, routine, repetitive work with one or two-step instructions and only occasional interaction with the public,

5

coworkers, or supervisors." Doc. #9-2 at 23–24; *see also* 20 C.F.R. § 404.1567. Based on this evaluation, the ALJ determined that plaintiff could not perform any of her past work as a prep person for circuit boards, a daycare worker, a temporary factory worker, an information and referral person, or a machine operator.

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC to conclude that plaintiff is capable of performing jobs that exist in significant numbers in the national economy, and therefore concluded that plaintiff is not disabled as defined by the SSA. *See* § 404.1520. Judge Fitzsimmons agreed with the ALJ's resolution as to each of the five steps of the analysis. I confine my discussion here to the two challenges posed by plaintiff to the ALJ's determinations at step three and step five of the process.

**Step Three: Assessing Severity of Mental Impairments**

Plaintiff first challenges the ALJ's assessment of her mental health impairments. She primarily objects to Judge Fitzsimmons' application of the "treating physician rule" in her decision approving the ALJ's decision to give diminished weight to the opinion of plaintiff's internist, Dr. Edward Prior, as to the severity of plaintiff's mental health impairments and greater weight to Dr. Campagna's opinion, as well as the agency's reviewing physicians. The law is clear that the Commissioner must apply the "treating physician rule" when considering "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2). "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' . . . '[M]edically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an

essential diagnostic tool.'" *Burgess*, 537 F.3d at 128  (internal citations omitted). But "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts." *Ibid.* (omissions in original) (citation omitted).

Even if the treating physician's opinion is not worthy of controlling weight, the ALJ must consider the following factors to evaluate the weight to give the opinion. *See* 20 C.F.R. § 404.1527(c)(2). These include "the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . , particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129 (citations omitted); *see also* 20 C.F.R. § 404.1527(c). And although a treating physician's opinion that a claimant cannot work "cannot itself be determinative" on that issue, and is not entitled to controlling weight, *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (citation omitted), the fact that a physician's opinion includes such a statement is not reason to deny controlling weight to the physician's opinions on the nature and severity of the impairment. *See ibid*. Ultimately, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' . . . Failure to provide such 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Burgess*, 537 F.3d at 129–30 (internal quotation marks and citations omitted).

Judge Fitzsimmons correctly determined that the ALJ "did not err in declining to afford" controlling weight to Dr. Prior's opinions regarding plaintiff's ability to work. Doc. #16 at 36. Neither the ALJ nor Judge Fitzsimmons invalidated Dr. Prior's medical opinions simply because

Dr. Prior also offered opinions regarding plaintiff's ability to work. Rather, the ALJ gave Dr. Prior's opinions "[o]nly slight weight" for other permissible reasons: "he is not a mental health professional, and his opinions are inconsistent with and unsupported by the medical evidence of record."[1] Doc. #9-2 at 27. The ALJ specifically noted that in the mental residual functional capacity questionnaire, from December 2010, which is "designed to rate a claimant's functional abilities, Dr. Prior did not rate any of the claimant's functional abilities." *Id.* at 25; *see also id.* at 662–63. In another form filled out in March 2011, which was designed to rate a claimant's medical incapacity, Dr. Prior left blank the section discussing "how long he expected the claimant's inability [to participate in simple competitive employment] to last." Doc. #9-2 at 26; *see also id.* at 672–73.

Indeed, Dr. Prior's descriptions of plaintiff's functional limitations were vague. In July 2010 and March 2011 reports, Dr. Prior declined to answer questions about how plaintiff's "symptoms or impairments . . . prevent . . . her from participating in employment," instead listing only her diagnoses, and he declined to provide details regarding her prognosis. Doc. #9-2 at 640–41, 672–73. In the December 2010 questionnaire, Dr. Prior described that plaintiff had chronic depressions with "periodic exacerbations," and noted that one or two months prior, she was "almost non functional," but had improved. *Id.* at 662–63. These descriptions are conclusory and fail to describe the plaintiff's specific functional abilities and the expected duration of her limitations. This alone could be sufficient reason to avoid giving Dr. Prior's opinions controlling weight. *See Abbott v. Colvin*, 596 F. App'x 21, 24 (2d Cir. 2015) (affirming ALJ's decision to deny controlling weight to treating physician whose assessment of functional limitations was

---

[1] I note that this explanation appears in the ALJ's discussion of plaintiff's residual functional capacity, and not in his analysis of the severity of plaintiff's mental impairments. But his explanation may apply equally to both analyses and I see no authority requiring an ALJ to provide the same explanation twice.

vague); *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (declining to give strong weight to physician's opinion that is "so vague as to render it useless in evaluating" plaintiff's ability to perform specific types of work), *superceded by regulation on other grounds by,* 20 C.F.R. § 404.1560(c)(2).

But in addition, the record supports Judge Fitzsimmons' conclusion that "Dr. Prior's opinions are inconsistent with his own treatment notes," particularly his notes during the relevant time period.[2] Doc. #16 at 37; *see also id.* at 37–38 (describing inconsistencies). His assessment does not specify the extent to which he relied on "medically acceptable clinical and laboratory diagnostic techniques," *Burgess*, 537 F.3d at 128, and it is not consistent with the opinions of the consulting mental health specialist, Dr. Campagna, or the other agency medical experts, Dr. Thomas Hill and Dr. Kelly Rogers. Although plaintiff challenges the validity of Dr. Hill's statement that plaintiff was "under the influence," experiencing medication side effects, or exaggerating her symptoms during her meeting with Dr. Campagna, *see* Doc. #9-2 at 68, Dr. Hill had the benefit of reviewing plaintiff's complete medical records, and was uniquely situated to compare Dr. Campagna's report against years of plaintiff's prior medical records and note the inconsistences and the unusual nature of her behavior with Dr. Campagna, and the lack of objective medical evidence that would support such behavior. More importantly, I am required to "defer to the [agency's] resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). The ALJ was entitled to give Dr. Hill's opinion some weight in evaluating Dr. Campagna's opinion.

Plaintiff also objects to Judge Fitzsimmons' finding that Dr. Campagna's opinion constituted substantial evidence supporting the ALJ's conclusion, and expresses skepticism that

---

[2] Although plaintiff notes the consistency of Dr. Prior's notes with his assessment in 2005, *see* Doc. #20 at 6, I am concerned only with assessments after the alleged onset of plaintiff's disability in 2008.

the ALJ in fact relied on Dr. Campagna's opinion. Specifically, plaintiff notes that although Dr. Campagna's opinion describes "the presence of *marked* impairment in concentration, attention and work pace," Doc. #9-2 at 647 (emphasis added), and the ALJ purportedly gave the opinion strong weight, the ALJ concluded at step three that plaintiff has "*moderate* difficulties" in those areas. *Id.* at 23.

But even if the ALJ mistakenly characterized this limitation, the error is harmless as it pertains to the step three analysis. Plaintiff does not object to the ALJ's conclusions that she experienced less than marked impairment along the other three functional "paragraph B" criteria, or that she did not meet the "paragraph C" criteria, and even a finding of marked difficulties in one area would be insufficient to uphold a conclusion that the severity of plaintiff's mental impairments is equivalent to a listed impairment. Moreover, as Judge Fitzsimmons noted, the ALJ also gave great weight to the state agency medical experts who, unlike Dr. Campagna, reviewed plaintiff's full medical record, and concluded that plaintiff had only moderate difficulties in the same area.[3] *See* Docs. #16 at 50–51; #9-2 at 27, 68, 95; *compare* Doc. #9-2 at 844 (Dr. Campagna notes that he reviewed only "a copy of an adult disability report provided by the Disability Determination Services"), *with id.* at 64–65 (noting that agency physician Thomas Hill reviewed Dr. Campagna's reports, medical records from Dr. Prior, and plaintiff's "Activities of Daily Living" report); *id.* at 77–78 (same for agency physician Kelly Rogers). *See also Cage*,

---

[3]Although the ALJ cites only Dr. Campagna's report in his assessment of plaintiff's concentration, persistence, or pace, *see* Doc. #9-2 at 23, it is clear that he considered the opinions of the other state agency medical experts as well, *see id.* at 27. Because the ALJ later clarified that he also relied heavily on the experts' opinions, this failure to specifically cite their opinions in the same paragraph does not warrant remand. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision. Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. So long as the ALJ's sources are apparent in the record, his failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks and citations omitted)).

692 F.3d at 122.

To the extent that plaintiff objects to the ALJ's reliance on plaintiff's Global Assessment of Functioning (GAF) score assigned by Dr. Campagna, he has specified no error in Judge Fitzsimmons' analysis of this issue, and accordingly I review it only for clear error. *See Brown v. Tuttle*, 2014 WL 7271658, at *2 (D. Conn. 2014); *Burgos v. Astrue*, 2010 WL 3829108, at *1 (D. Conn. 2010); *see also* Doc. #16 at 51–52. Finding none, I affirm Judge Fitzsimmons' conclusion that the ALJ's appropriately considered the GAF score in conjunction with other medical evidence.

In short, I conclude that substantial evidence supported the ALJ's decision at step three to decline to give Dr. Prior's opinions controlling weight regarding plaintiff's functional limitations. I also find that substantial evidence supported the ALJ's finding that the severity of plaintiff's mental impairments did not render her categorically disabled.

**Step Five: Vocational Expert Testimony**

Plaintiff also objects to Judge Fitzsimmons' determination that it was proper at step five for the ALJ to rely exclusively on the Social Security Administration's Medical-Vocational Guidelines (colloquially known as "the Grids") to determine whether plaintiff could find work in the national economy. Plaintiff contends that the ALJ was obligated to consider testimony from a vocational expert to make this determination, and that the ALJ's determination that no vocational expert testimony was required was not supported by the record evidence. I agree and for essentially the same reasons that I have discussed in a prior ruling involving the same issue. *See Mattioli v. Comm'r of Soc. Sec.*, 2015 WL 4751046 (D. Conn. 2015).

It is well established that the Commissioner may ordinarily satisfy her burden of proof at step five by means of reliance on the Grids and their determinations of the types and numbers of

jobs that exist in the national economy based on a claimant's age, ability, education, and work experience. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). But the Grids are premised on limitations relating to a person's physical strength, and "are inapplicable in cases where the claimant exhibits a significant non-exertional impairment (*i.e.*, an impairment not related to strength)." *Selian*, 708 F.3d at 421; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (Grids not "fully applicable" for "certain mental, sensory, or skin impairments" or "postural and manipulative limitations or environmental restrictions").

If the Grids are inadequate, then an ALJ must instead consider vocational expert testimony. *See Butts v. Barnhart*, 388 F.3d 377, 383–84 (2d Cir. 2004) [hereinafter *Butts I*], *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005) [hereinafter *Butts II*]. The Second Circuit maintains a case-by-case approach to assessing applicability of the Grids and the need for expert testimony to determine the employability of claimants who fall into this category. *See ibid.*; *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

Notably, the Second Circuit has made clear that "the ALJ cannot rely on the Grids if a non-exertional impairment [such as a mental or postural limitation] has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead [the ALJ] must obtain the testimony of a vocational expert." *Selian*, 708 F.3d at 421 (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). "A nonexertional impairment is non-negligible 'when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Ibid.* (quoting *Zabala*, 595 F.3d at 411).

An ALJ must make a specific finding on the significance of the non-exertional impairment, and adequately explain that finding on the record, to determine whether he or she

12

must consider testimony from a vocational expert. *See Bapp*, 802 F.2d at 603, 605–06. If the ALJ declines to hear vocational expert testimony in the face of evidence that a claimant has significant non-exertional limitations, but offers no adequate explanation for his decision, *ibid.*, or if the ALJ fails "to apply correctly the distinction between cases where reliance on the grid suffices and those where the testimony of a vocational expert is essential to a denial of benefits," a court should remand the case. *Butts I*, 388 F.3d at 387; *see also Ramos v. Barnhart*, 2006 WL 980570, at *13 (D. Conn. 2006) ("Remand is particularly appropriate where . . . the Court is 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or a clearer explanation for the decision.'" (citation omitted)).

Here, the ALJ concluded that plaintiff's non-exertional limitations enable her to perform only "simple, routine, repetitive work with one or two-step instructions," and allow her "only occasional interaction with the public, coworkers, or supervisors." *See* Doc. #9-2 at 23–24. But the ALJ's decision does not discuss whether plaintiff's non-exertional limitations were "non-negligible" or not, and whether he should consult resources outside the Grids to evaluate plaintiff's ability to work. Instead, the ALJ concluded that plaintiff's "limitations have little or no effect on the occupational base of unskilled light work." Doc. #9-2 at 28–29. This conclusion and its focus on the Grid's occupational base rather than plaintiff's own limitations "failed to consider the intermediate question—whether the range of work [plaintiff] could perform was so significantly diminished as to require the introduction of vocational testimony." *Bapp*, 802 F.2d at 606. This is critical, in light of evidence of plaintiff's non-exertional limitations. *See, e.g.*, Doc. #9-2 at 23 (ALJ conclusion that "[d]ue to [plaintiff's] mood disturbance, [she] is limited to performing simple, routine, repetitive work with one or two-step instructions and only occasional interaction with the public, coworkers, or supervisors."); *id.* at 647 (Dr. Campagna

noted several marked or moderate limitations due to plaintiff's mental illness).

Numerous other ALJ decisions have recited verbatim the same language that the ALJ used here—that a claimant's non-exertional "limitations have little or no effect on the occupational base of unskilled light work," or more than "only a slight effect on the occupational base," and other courts have found this bare conclusion inadequate to avoid considering or relying on vocational expert testimony. *See, e.g.*, *Prince v. Colvin*, 2015 WL 1408411, at *21-*22 (S.D.N.Y. 2015); *Hernandez v. Colvin*, 2014 WL 3883415, at *15 (S.D.N.Y. 2014); *Bunn v. Colvin*, 2013 WL 4039372, at *10 (E.D.N.Y. 2013); *Staggs v. Astrue*, 781 F. Supp. 2d 790, 798 (S.D. Ind. 2011).

I also note that, although "the absence of an express rationale does not prevent [the court] from upholding the ALJ's determination" if adequate support can be found in the record, *Berry v. Schweiker,* 675 F.2d 464, 468 (2d Cir. 1982), I cannot say, without more explanation, that the ALJ's conclusion is supported by substantial evidence. First, the ALJ did not name the specific non-exertional limitations at issue. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *Hernandez*, 2014 WL 3883415, at *15. Moreover, all medical experts seemed to conclude that plaintiff's mental impairments have caused *some* impact on her ability to perform unskilled work. The performance of unskilled work requires "the abilities (on a sustained basis) to understand, carry out, and remember single instructions; to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting." *Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985) (emphasis added) [hereinafter SSR 85-15].

Dr. Campagna, Dr. Hill, and Dr. Rogers, on whose opinions the ALJ relied strongly, each

found that plaintiff had some limitation in one or more of these areas as a result of mental impairments. *See, e.g.*, Doc. #9-2 at 647 (Dr. Campagna noted marked or moderate impairments in plaintiff's "ability to understand, recall, and carry out even simple instructions," her "ability to respond appropriately to supervisors, coworkers, and the public," and her "ability to withstand workplace stresses"); *id.* at 70 (Dr. Hill noted moderate limitations in plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms . . . ." and noting that "Residual [symptoms] . . . limit . . . working consistently."); *id.* at 97 (Dr. Rogers noted moderate limitations in plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms . . . .").

The Social Security Administration regulations make clear that "[a] *substantial* loss of ability to meet any of these basic work-related activities would *severely* limit the potential occupational base." SSR 85-15. It stands to reason that a moderate or slight loss of ability in these areas could have a non-negligible impact on the range of work available to plaintiff.

Accordingly, I remand the case to the ALJ to reconsider his determination as to step five. *See Selian*, 708 F.3d at 422 (remanding in light of absence of ALJ finding as to whether non-exertional reaching limitation was "negligible" in light of ALJ "finding that [claimant] could reach only 'occasionally'"); *Dambrowski*, 590 F. Supp. 2d at 584 ("Because the plaintiff claimed a significant non-exertional impairment, the ALJ was required to 'introduce the testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform'") (quoting *Bapp*, 802 F.2d at 603)); *see also* SSR 85-15 ("Determining whether [mentally impaired] individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult" and requires a thorough "evaluation on an individualized basis.").

On remand, the ALJ should provide a clear explanation regarding the extent to which

plaintiff's non-exertional limitations diminish her ability to perform light, unskilled work. If the ALJ concludes that plaintiff's non-exertional limitations are more than negligible, then he should consider vocational expert testimony to ascertain the existence of jobs in the economy for an individual with plaintiff's limitations. If the Commissioner fails to present "a vocational expert to testify that a person with [plaintiff's] attributes and qualifications could find" work in the national economy, the ALJ should conclude that plaintiff is disabled. *Butts II*, 416 F.3d at 104. The ALJ should complete this reconsideration within either 120 days or 90 days from the date that plaintiff advises the ALJ that she is ready to go forward with further proceedings, whichever is longer. *See Barbour v. Astrue*, 950 F. Supp. 2d 480, 491 (E.D.N.Y. 2013), *amended on reconsideration* (July 25, 2013).

## CONCLUSION

Plaintiff's motion to reverse or remand (Doc. #13) is GRANTED. Defendant's motion for order to affirm the decision of the Commissioner (Doc. #15) is DENIED. The case is remanded for the ALJ to evaluate the significance of plaintiff's non-exertional limitations and, if necessary, to consider vocational expert testimony as to plaintiff's ability to find work that exists in the national economy.

It is so ordered.

Dated at New Haven this 5th day of January 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge